**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF INDIANA, | |
| Plaintiff, | |
| v. | CAUSE NO.: 2:17-CV-478-TLS-JEM |
| DONALD J. WAGONER and WAGONER MEDICAL CENTER, L.L.C., | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on Defendants Donald J. Wagoner and Wagoner Medical Center, L.L.C.'s Motion to Dismiss [ECF No. 109]. Because the Defendants' Motion to Dismiss relies on documents detailing facts not alleged in the Plaintiffs' Second Amended Complaint [ECF No. 47], the Court converts the Motion to Dismiss to a motion for summary judgment, and, based on the following, the Court DENIES the Defendants' Motion.

**BACKGROUND**

On December 29, 2017, the Plaintiffs the United States of America and the State of Indiana filed a Complaint [ECF No. 1]. The United States brought this action on behalf of itself and the United States Department of Health and Human Services, which oversees the Medicaid Program. Compl. ¶ 5, ECF No. 1. Funding for Medicaid is shared between the federal government and those states, including Indiana, participating in the Medicaid Program. *Id.* The State of Indiana brought this action on behalf of itself and the Office of Medicaid Policy and Planning, which administers the Indiana Health Coverage Program ("Indiana Medicaid"). *Id.* at 6. The Plaintiffs brought this action against Defendants Don J. Wagoner, Marilyn L. Wagoner, Wagoner Medical Center, L.L.C. ("WMC"), Wagoner Medical Center, P.C., and Don J.

Wagoner, M.D. and Marilyn L. Wagoner, M.D., P.C., alleging the Defendants induced Indiana Medicaid to overpay for medical services the Defendants rendered by submitting false and fraudulent claims for reimbursement. Based on these allegations, the Plaintiffs asserted the following legal theories: violations under the Presentment, Material Statement, and Materiality Clauses of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., and the Indiana Medicaid False Claims and Whistleblower Protection Act ("INFCA"), Ind. Code § 5-11-5.7 et seq.; conspiracy to violate the FCA and INFCA; payment by mistake and unjust enrichment; improper receipt of Medicaid payments constituting violations of Indiana Code; and relief under the Indiana Crime Victims Relief Act. Compl. ¶¶ 65–139.

On September 20, 2018, the Court issued an Opinion and Order [ECF No. 21] on the Defendants' Motion to Dismiss [EFC. No. 11], dismissing without prejudice the claims against Marilyn L. Wagoner, Wagoner Medical Center, P.C., and Don J. Wagoner, M.D. and Marilyn L. Wagoner, M.D., P.C., as well as the conspiracy claims. On January 18, 2019, the Plaintiffs filed an Amended Complaint [ECF No. 38] reflecting the remaining claims. On September 12, 2019, the Plaintiffs filed a Second Amended Complaint [ECF No. 47], which is the target of the Defendants' pending Motion to Dismiss.[1] In Counts 1–3 and 6–8, the Second Amended Complaint reincorporates the original claims under the FCA and the INFCA based on allegations of fraudulent coding of urine drug screen tests and additionally alleges in support of those FCA and INFCA claims that the Defendants submitted claims to Indiana Medicaid for urine drug

---

[1] On January 16, 2020, the Plaintiffs filed a Third Amended Complaint [ECF No. 83] to correct calculation errors in the amount of the Plaintiffs' claim against the Defendants. *See* Mot. ¶ 3, ECF No. 81. The Defendants move to dismiss the Second Amended Complaint because it was the first pleading to state the factual allegations the Defendants contend are time-barred, but the Defendants intend for the motion to apply to the Third Amended Complaint as well. Mem. 1 n.1, ECF No. 125. For clarity and convenience, the Court cites and analyzes the Second Amended Complaint.

screen tests that were not medically necessary and served no legitimate medical purpose. Second Am. Compl. ¶¶ 68, 83, 99, ECF No. 47.

On January 10, 2022, the Defendants filed the instant Motion to Dismiss for Failure to State a Claim [ECF No. 109] based solely on the argument that the Second Amended Complaint asserts new claims that are barred by the statute of limitations. The Defendants thereafter sought [ECF No. 122], and this Court granted [ECF No. 123], leave to file an Amended Memorandum in Support of their Motion to Dismiss [ECF No. 125], which the Defendants filed on February 28, 2022. On March 25, 2022, the Plaintiffs filed a Response [ECF No. 129], and on March 31, 2022, the Defendants filed a Reply [ECF No. 130]. This motion is fully briefed and ripe for ruling.

## LEGAL STANDARD

Before beginning the substantive analysis relevant to the Defendants' affirmative defense, the Court must determine whether to convert the Defendants' Motion to Dismiss, which does not cite any procedural rule, into one for summary judgment. A court may convert a defendant's Rule 12(b)(6) motion to dismiss into a motion for summary judgment if the defendant attaches to the motion materials outside the complaint that the court "actually considers." *Marques v. Fed. Rsrv. Bank of Chi.*, 286 F.3d 1014, 1017 (7th Cir. 2002); *see also* Fed. R. Civ. P. 12(d). It is error potentially requiring remand where a court converts a party's motion to dismiss into a motion for summary judgment without giving the non-moving party notice and an opportunity to respond. *Thompson v. Cope*, 900 F.3d 414, 425–26 (7th Cir. 2018); *see also* Fed. R. Civ. P. 12(d).

In support of their Motion to Dismiss, the Defendants attached several exhibits the Plaintiffs produced in discovery that, while supporting the Second Amended Complaint, contain

3

facts not alleged therein. *See* Defs.' Mot., Mem. Exs., ECF Nos. 109-1–109-3, 125-1–125-10.

Though they did not ultimately offer any evidence contradicting the factual materials in the

Defendants' exhibits, the Plaintiffs presented their Response as though the Defendants had

brought a motion for summary judgment and indicated a willingness for the Court to treat

Defendants' motion as one for summary judgment. ECF No. 129.[2] Because in this situation the

Plaintiffs, as the non-moving parties, received sufficient notice and took the opportunity to

respond to the evidence extraneous to the Second Amended Complaint, the Court finds it proper

to convert the Defendants' Motion to Dismiss into one for summary judgment.

A movant is entitled to summary judgment if it can show "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The movant must either demonstrate "an absence of evidence supporting an essential

element of the non-moving party's claim" or present "affirmative evidence that negates an

essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*,

817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make

a sufficient showing on every element of his case on which he bears the burden of proof; if he

fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354,

358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In ruling on a motion for summary judgment, a court must construe all facts and draw all

reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted).

A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies,

and decide whom to believe. The court has one task and one task only: to decide, based on the

---

[2] The Defendants comment in their Reply that the Plaintiffs have mischaracterized the Motion to Dismiss but do not otherwise protest the conversion of their Motion into one for summary judgment. Reply 3–4, ECF No. 130.

evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is only properly entered based on a statute of limitations affirmative defense "if (1) the statute of limitations has run, thereby barring plaintiff's claim as a matter of law, and (2) there exist no genuine issues of material fact regarding the time at which plaintiff's claim has accrued and the application of the statute to plaintiff's claim which may be resolved in plaintiff's favor." *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1219 (7th Cir. 1984). Though the date the pertinent statute of limitations starts running is "generally one for the jury . . . the plaintiff must present facts raising a genuine issue in order to avoid the statute of limitations." *Avery v. Mapco Gas Prods., Inc.*, 848 F. Supp. 1388, 1393 (N.D. Ind. 1991).

## ANALYSIS

Before turning to the merits of the Defendants' Motion, a preliminary issue the Court must resolve is whether the Defendants have waived their statute of limitations argument by failing to raise it as an affirmative defense in their Answer to the Second Amended Complaint.

**A.      The Defendants Did Not Waive Their Statute of Limitations Affirmative Defense**

The Plaintiffs filed their Second Amended Complaint after receiving leave of Court; the Plaintiffs received such leave, in part, because they represented that they became aware of the new allegations regarding lack of medical necessity only after they received their expert's report. Order 2–3, ECF No. 46. The Defendants contend they relied on this representation in omitting from their Answer to the Second Amended Complaint any affirmative defenses based on the statute of limitations. Reply 3–5, ECF No. 130. The Defendants also note they stated in their

Answer that they "intended to rely upon any additional defenses that are now or may become available . . . as a result of" discovery. Ans. 49, ECF No. 67.

While Federal Rule of Civil Procedure 8(c) generally requires that a defendant raise any affirmative defenses in the answer, "[t]he purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it." *Williams v. Lampe*, 399 F.3d 867, 871 (7th Cir. 2005). Courts may permit a defendant to raise an affirmative defense not included in the answer where the plaintiff retains an adequate opportunity to respond and otherwise suffers no prejudice. *Id.* (noting mere delay does not demonstrate prejudice if the plaintiff has a chance to respond, contrasted with a situation in which a defendant raised an affirmative defense for the first time in a reply brief for a motion for summary judgment (citing *Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1997))). Whether to allow a statute of limitations affirmative defense that was not initially advanced in a defendant's answer is within the trial court's discretion. *See Lampe*, 399 F.3d at 871; *Johnson v. Sullivan*, 922 F.2d 346, 355 (7th Cir. 1990).

Here, the Defendants raised their statute of limitations affirmative defense for the first time in their Motion to Dismiss because the Plaintiffs had previously represented that the new allegations arose from newly discovered evidence. The Plaintiffs had the opportunity to rebut the Defendants' statute of limitations defense and omitted from their Response any meaningful discussion of prejudice or any claim that they did not receive sufficient notice. Because the Plaintiffs have suffered no prejudice and because the Defendants may not have had a basis for believing they could raise the affirmative defense earlier, the Court exercises its discretion to review the merits of the Defendants' statute of limitations affirmative defense.

**B.**     **The Statute of Limitations Does Not Bar the New Medical Necessity Allegations**

The Defendants' sole argument in their Motion is that the Plaintiffs' new allegations in the Amended Complaint—that the Defendants submitted fraudulent claims for services that lacked any medical necessity and submitted corresponding records and statements to Indiana Medicaid—are barred by either or both the three- or the six-year limitations periods provided in 31 U.S.C. § 3731(b) and Indiana Code § 5-11-5.5-9(b) and that the allegations regarding medical necessity do not relate back under Federal Rule of Civil Procedure 15(c) to December 29, 2017, the date the original Complaint was filed. The Defendants reason that, if the six-year limitations period applies, it bars the new factual allegations because they were not pled until September 12, 2019, more than six years after the last violation would have occurred in January 2013. *See* 31 U.S.C. § 3731(b)(1); Ind. Code § 5-11-5.5-9(b)(1). If the three-year limitations period applies, the Defendants contend Exhibits 1–10 attached to their Motion demonstrate the Plaintiffs had notice of the facts of the new allegations of lack of medical necessity in 2012 or earlier and did not raise those allegations within three years. *See* 31 U.S.C. § 3731(b)(2); Ind. Code § 5-11-5.5-9(b)(2).

In their Response to the Defendants' Motion, rather than countering Defendants' Exhibits and the Defendants' accompanying factual assertions with facts of their own, the Plaintiffs argue Exhibits 1–10 are not at issue in this case for various reasons. Resp. ¶¶ 1–11, ECF No. 129. Because the Plaintiffs do not dispute the authenticity of the Exhibits or otherwise create any genuine issue of material fact, the Court's analysis focuses on the merits of the legal arguments raised in the parties' briefs.

At the outset, the Court notes that both the relief the Defendants seek in their Motion and the parties' interpretation of the Plaintiffs' new allegations are unclear. First, in the opening lines

of their Motion, the Defendants state they "hereby move this Court to dismiss *the Second Amended Complaint* [ ] as time-barred." Mem. 1, ECF No. 125 (emphasis added). However, the Defendants conclude the Motion by stating that

> *the medical necessity claims* that Plaintiff pleaded for the first time in the Second Amended Complaint are time barred and must be dismissed.
> WHEREFORE, the Defendants respectfully request that *the claims* in the Second Amended Complaint that the Defendants violated the FCA and the Indiana False Claims and Whistleblower Protection Act by submitting claims for urine drug tests that were medically unnecessary or served no legitimate medical purpose be DISMISSED as time-barred.

*Id.* at 23 (emphasis added). The Defendants do not present any argument as to why the original "coding claims" now realleged in Counts 1–3 and 6–8 or the other original factual allegations now realleged in Counts 4, 5, 9, or 10 are time-barred, and the Court does not interpret the Motion as seeking the dismissal of those allegations and corresponding legal theories. The Court, therefore, constrains its review of the statute of limitations as to the new allegations of "lack of medical necessity."

Second, it is unclear whether the parties see the allegations pertaining to the issue of "lack of medical necessity" as a new and additional *theory* pleaded explicitly under some counts or as an entirely *new claim*. Though the Defendants' briefing varies, it appears the Defendants view the allegations as a new and separate claim.[3] In their Response, the Plaintiffs do not explicitly address the Defendants' characterization. However, the Second Amended Complaint styles the new allegations involving lack of medical necessity as supplemental facts buttressing the facts involving fraudulent coding in support of the fraud claims in Counts 1–3 (FCA) and 6–8 (INFCA) and the legal theories articulated therein. *See* Second Am. Compl. ¶¶ 61–111.

---

[3] The Defendants classified those allegations inconsistently both as "claims" and as "theories" of liability. *Compare* Mem. 2, 9, 10, 13, 14, 17, 18, 20, 21, 22, ECF No. 125, *with id.* at 7, 8, 16, 17, 18, 19, 22.

The inquiry matters because the statute of limitations applicable to the FCA and the INFCA applies to a "civil action," not late-raised supplemental facts to support the same legal theories arising from the same civil action, and it is not evident that the allegations regarding lack of medical necessity that the Defendants contend are time-barred constitute a distinct "civil action." Because the statute of limitations argument is an affirmative defense, the Defendants carry the burden of demonstrating it applies. *Gildon v. Bowen*, 384 F.3d 883, 886 (7th Cir. 2004); *see also* Fed. R. Civ. P. 8(c)(1). Only after the Defendants have met this burden does the onus shift to the Plaintiffs to show their claims fall into an exception to the statute of limitations. *Knox v. Cook Cnty. Sheriff's Police Dep't*, 866 F.2d 905, 907 (7th Cir. 1988). Though they raise the affirmative defense of the statute of limitations, the Defendants do not explain why the Plaintiffs' two "theories of liability"—the allegations regarding fraudulent coding and lack of medical necessity—constitute individual causes of action. In determining whether the Defendants have met their initial burden of showing their affirmative defense applies, the Court uses as a starting point the language of the statute of limitations applicable to the FCA:

> (b) A *civil action* under section 3730 may not be brought—
>   (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>   (2) more than 3 years after the date when *facts material* to the *right of action* are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731 (emphasis added). The statute of limitations applicable to the INFCA is functionally the same.[4]

---

[4] That provision appears as follows:
>   (b) A civil action under section 4 of this chapter is barred unless it is commenced:
>     (1) not later than six (6) years after the date on which the violation is committed; or
>     (2) not later than three (3) years after the date when facts material to the cause of action are discovered or reasonably should have been discovered by a state officer or employee

Whether the allegations involving medical necessity are separate claims, and the outcome of the Defendants' Motion, hinge on the three emphasized portions of this language. First, "civil action" refers to an action or a claim; it does not bar the assertion of supplemental facts that may support the same claim. Black's Law Dictionary defines a cause of action as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." *Cause of Action*, Black's Law Dictionary (11th ed. 2019). The Seventh Circuit has similarly noted, "One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate." *N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992). Also helpful are the following observations of another district court in this circuit:

> A "count" is not a claim *per se*, but rather the articulation of a legal theory on which a claim may be premised. There may be more than one legal theory advanced in support of a single claim: "One claim supported by multiple theories does not somehow become multiple claims."

*Gill-Richards v. Campanelli*, No. 20 C 00822, 2022 WL 79866, at *2 (N.D. Ill. Jan. 7, 2022) (quoting *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012)). However, "[t]wo legal theories sufficiently distinct that they call for proof of substantially different facts may be separate 'claims.'" *N.A.A.C.P.*, 978 F.2d at 292. The core question in the present motion is whether the allegations involving fraudulent coding and the allegations involving lack of medical necessity are different enough and implicate enough separate facts to warrant their separation into distinct claims. The Court finds they do not constitute separate claims.

---

who is responsible for addressing the false claim. However, an action is barred unless it is commenced not later than ten (10) years after the date on which the violation is committed.

Ind. Code § 5-11-5.5-9.

To answer to this question, the Court considers whether the exhibits offered by the Defendants in support of their motion are relevant in light of the two emphasized portions of 31 U.S.C. § 3731(b)(2) above. If fraudulent submission by coding and fraudulent submission because of lack of medical necessity of the same 6,433 Medicaid claims are two theories offered to prove the same violations of 31 U.S.C. § 3729(a)(1) articulated in the original Complaint, then "*facts material* to the *right of action*" does not apply to the facts in the Defendants' exhibits. If they form separate claims under the FCA, then "*facts material*" may implicate those exhibits and trigger the three-year statute of limitations based on the filing date of the Second Amended Complaint.

In determining how to characterize the allegations of fraud by coding and fraud by lack of medical necessity, the Court reviews the language of the FCA and the INFCA as well as the facts the Plaintiffs allege demonstrate these two types of fraud supporting the statutory violations. First, in each of the original and amended Complaints, Counts 1–3 under the FCA have consistently cited the same provisions of 31 U.S.C. § 3729(a)(1), namely §§ 3729(a)(1)(A), 3729(a)(1)(B), and 3729(a)(1)(G), respectively, which provide:

> (1) . . . any person who–
>> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>> . . .
>> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 … plus 3 times the amount of damages which the Government sustains because of the act of that person.

11

*See, e.g.*, Second Am. Compl. Count 1 (§ 3729(a)(1)(A)), Count 2 (§ 3729(a)(1)(B)), Count 3 (§ 3729(a)(1)(G)). The statutory provisions the Plaintiffs allege give rise to injuries under the INFCA in Counts 6–8 are substantially the same.[5]

In their original Complaint, the Plaintiffs alleged the Defendants' fraudulent scheme proceeded as follows. WMC was enrolled as a Medicaid provider and authorized biller with Indiana Medicaid. Compl. ¶¶ 9, 38. Under Indiana Code § 12-15-11-2, providers who wish to provide services to Medicaid patients must execute a Provider Agreement. *Id.* at ¶ 35. Under the Provider Agreement, a provider, together with its authorized agents, employees, and contractors, are required to comply with all federal and State of Indiana statutes and regulations pertaining to Medicaid, the Indiana Medicaid Provider Manual, and all bulletins and notices communicated to the provider. *Id.* at ¶ 36. Pursuant to the Provider Agreement and the rules of the Indiana Medicaid program, compliance with the Provider Agreement, Indiana Medicaid Provider Manual, program bulletins, and notices are a condition of payment. *Id.* at ¶ 40. Don Wagoner and

---

[5] The Plaintiffs cite the following provisions of the INFCA in Count 6 (§ 5-11-5.7-2(a)(1)), Count 7 (§ 5-11-5.7-2(a)(2)), and Count 8 (§ 5-11-5.7-2(a)(6)) of the Second Amended Complaint, which provide that the following claimants violate that Act:
> (a) A person who:
> > (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> > (2) knowingly makes, uses, or causes to be made or used, a false record or statement that is material to a false or fraudulent claim;
> > . . .
> > (6) knowingly:
> > > (A) makes, uses, or causes to be made or used, a false record or statement concerning an obligation to pay or transmit money or property to the state; or
> > > (B) conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state; . . . .

Ind. Code § 5-11-5.7-2; *see also United States v. Indianapolis Neurosurgical Grp., Inc.*, No. 1:06-CV-1778, 2013 WL 652538, at \*7 n.9 (S.D. Ind. Feb. 21, 2013) (noting "the Indiana FCA 'mirrors the Federal FCA in all material respects'") (quoting *Kuhn v. LaPorte Cnty. Comprehensive Mental Health Council*, 3:06-CV-317, 2008 WL 4099883, at \*3 n.1 (N.D. Ind. Sept. 4, 2008)).

WMC executed, and were obligated to comply with, Indiana Medicaid Provider Agreements. *Id.* at ¶ 37.

A provider enrolled in Medicaid submitting claims for reimbursement uses a code associated with a particular service performed for a covered individual. *Id.* at ¶ 41. These codes come from a series of books authored by the American Medical Association called the Current Procedure Terminology, Professional Edition, also referred to as the CPT. *Id.* The codes contained within the CPT are called CPT Codes and are denominated by five digits. *Id.* The CPT also provides for coding in addition to the five-digit base code in certain situations. *Id.* at ¶ 49. One situation where it would be appropriate for a provider to employ coding in addition to the five-digit base code is where a provider has performed identical services administered to the same patient on the same day that were rendered for legitimate treatment purposes. *Id.* at ¶¶ 40–50. In such a situation, the CPT instructs the provider to add a 91 modifier to the five-digit CPT code. *Id.* at ¶ 49.

In December 2010, all enrolled Indiana Medicaid providers, including the Defendants, received Indiana Medicaid Bulletin BT201062, which announced the new CPT Code 80104, "drug screen, qualitative; multiple drug classes other than chromatographic procedure." *Id.* at ¶ 51. Beneath the language for CPT Code 80101, the 2011 CPT book explained, "[f]or qualitative analysis by multiplexed screening kit for multiple drugs or drug classes, use 80104." *Id.* The effective date for the new billing rules requiring Indiana Medicaid providers to use CPT Code 80104 was January 1, 2011. *Id.* at ¶ 54.

The Defendants required patients seeking a prescription for opioid or other pain medication to submit urine samples for testing. *Id.* at ¶ 53. The Defendants conducted qualitative testing of those samples, meaning the Defendants tested patient urine for the presence or absence

of nine or more drugs and drug classes. *Id.* Specifically, the Defendants used multiplexed screening kits, which are qualitative tests designed to use a single urine sample. *Id.* at ¶¶ 46, 51.

The Plaintiffs alleged the proper CPT code applicable to such services was CPT Code 80104, which should have applied once per patient, per day, with no accompanying modifier code. *Id.* at ¶¶ 54–55. The Plaintiffs alleged the Defendants instead applied CPT Code 80101 to those services for 6,433 claims from January 1, 2011, through January 13, 2013. *Id.* at ¶ 55. The Plaintiffs alleged the Defendants used CPT Code 80101 with an accompanying 91 modifier code and submitted nine or more claims for a single multiplexed screening kit urine test. *Id.* at ¶ 52. The Plaintiffs alleged the 91 modifier code is inappropriate for a test that used a single sample from a single patient visit, as a provider using the 91 modifier code in essence would be claiming it provided identical services to a patient who returned multiple times in a day and provided a new urine sample. *Id.* at ¶ 49. The Plaintiffs alleged the Defendants consequently falsely and fraudulently induced Indiana Medicaid to overpay them $1,121,277.76 for 6,433 claims. *Id.* at ¶ 52.

In their Second Amended Complaint, the Plaintiffs reallege those facts of coding fraud and further allege that some or all of those same 6,433 fraudulent Medicaid claims and the corresponding records and material statements were fraudulent for the additional reason that they were unsupported by medical necessity or any legitimate medical concern. The Plaintiffs allege the Defendants required patients seeking a prescription for opioid pills or other pain medication to submit urine samples and then would qualitatively test single urine samples using multiplex screening kits. Second Am. Compl. ¶ 46. These multiplexed screening kits could be used to indicate whether the patient was using illegal substances, alcohol, or non-prescribed drugs or was not currently taking any other prescription drugs, all of which could contraindicate the

14

prescription of opioids. *Id.* Despite urine test results that signaled a patient may be using any such substances, the Plaintiffs allege the Defendants failed to react accordingly in that they proceeded to prescribe and refill opioid prescriptions and continued to submit patients to testing that was never applied to patient care. *Id.* The Plaintiffs allege the Defendants then submitted the 6,433 claims for this urine testing to Indiana Medicaid and were overpaid because of the fraudulent coding and lack of medical necessity. *Id.* at ¶ 59.[6]

Though the facts indicating *how* the Defendants allegedly defrauded Indiana Medicaid differ, a few crucial points of the fraud claims have been consistent through all versions of the Plaintiffs' complaints. First, the time period in which the fraud was alleged is unchanged: January 1, 2011, through January 13, 2013. Compl. ¶ 63; Second Am. Compl. ¶ 59. Second, the service provided for which the Defendants sought reimbursement is the same: the urine drug screen tests using multiplexed screening kits. Compl. ¶ 63; Second Am. Compl. ¶ 59. Finally, and most importantly, the actual number of fraudulent claims submitted for reimbursement from Indiana Medicaid is the same: the Defendants allegedly submitted "6,433 claims that falsely and fraudulently induced Indiana Medicaid to overpay." Compl. ¶ 63; Second Am. Compl. ¶ 59. Neither the original nor the amended complaints otherwise suggest the fraudulent Medicaid claims at issue—the same 6,433 claims—have changed. *See* Compl. Exs. 1A–1E; Second Am. Compl. Exs. 1A–1E.[7]

The Court finds these similarities dispositive. While additional facts regarding the lack of medical necessity have been introduced to support the Plaintiffs' FCA and INFCA claims of

---

[6] The overpayment amount in the Second and Third Amended Complaints vary for reasons not relevant to the instant analysis. ECF Nos. 47, 83.

[7] For reasons not relevant to the analysis, the Third Amended Complaint decreased the number of Medicaid claims at issue from 6,433 to 5,217. *Compare* Second Am. Compl. Exs. 1A, 1B, 1C, ECF No. 1, *with* Third Am. Compl. Exs. 1A, 1B, 1D, ECF No. 83.

fraud, the actual *injury* the Plaintiffs allege they suffered—the fact of the submission of 6,433

false and fraudulent Medicaid claims, and their corresponding statements and records, for

improper qualitative multiplexed urine drug testing kits between January of 2011 and January of

2013—has not. Construing the facts in the light most favorable to the Plaintiffs, this is the "[o]ne

set of facts producing one injury" that creates the Plaintiffs' cause of action here. *N.A.A.C.P.*,

978 F.2d at 292.

This characterization of the injury and the 6,433 Medicaid claims aligns with the

generalized injury recognized by the FCA and INFCA, which permit the government to sue for

redress for many kinds of fraud. The elements of the injury the statutes recognize are unspecific.

Because the Second Amended Complaint rearticulates that the Plaintiffs sustained the same

injuries based on the same provisions of the FCA and INFCA—albeit, in an additional manner

than was pled in the original Complaint—the Court finds the allegations of fraudulent coding and

lack of medical necessity constitute different theories underpinning the same legal claims and the

same "cause of action" under the FCA and the INFCA.[8] Consequently, when construing the facts

---

[8] Even if the coding and lack of medical necessity theories constitute two separate claims, the later pled
lack of medical necessity claims would relate back under Rule 15(c)(1)(B), which permits an amended
pleading to relate back to the filing date of original claims where the new claim "arose out of the same
conduct, transaction, or occurrence" in the original complaint. The Defendants dispute relation back in
their opening brief, but they do not argue that the injuries articulated in the original and amended
Complaints do not arise from the same alleged transactions: the submission of 6,433 false and fraudulent
claims and their corresponding records and statements. The Defendants cite for support *Vorgias v.
Memorial Health System, Inc.*, 2:12-CV-218, 2012 WL 5947773 (N.D. Ind., Nov. 27, 2012). That case
undermines their position. In that case, the plaintiff sought and was granted leave to amend her petition to
allege that the same core facts arose under the Americans with Disabilities Act, as opposed to the Family
and Medical Leave Act, the theory under which she had initially pled. *Id.* at *4. The court granted leave
because it found both the initial and amended complaint contained the same "background facts," *id.*; such
is the case here. As a bankruptcy court in this circuit explained,

> [T]he amended complaint should be deemed to relate back where it arises out of the same
> conduct, transaction, or occurrence as the original action. *Id.* . . . As this Court has held
> previously, "[w]hen the same transaction gives rise to both the claim in the original
> pleadings and the claim asserted in the amendment, then the defendant has received fair
> notice that he is being sued for his conduct in that transaction." [*In re Kruszynski*, 150 B.R.
> 209, 211 (Bankr. N.D. Ill. 1993)]. In the instant case, the Trustee has pleaded a set of facts

16

in the light most favorable to the nonmoving party, the statute of limitations—which bars new

"civil actions" and not factual additions to the already-pled claims—does not bar the allegations

relating to lack of medical necessity because the Defendants have not argued or shown this cause

of action arising under the FCA and the INFCA was untimely when it was first filed in 2017.

## CONCLUSION

Based on the foregoing, the Court DENIES the Defendants' Motion [ECF No. 109].

SO ORDERED on February 7, 2023.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

that, if proven true, might demonstrate a common series of transaction giving rise to both the original and amended claims.

*In re Gerardo Leasing, Inc.*, 173 B.R. 379, 391 (Bankr. N.D. Ill. 1994). In their briefing, without supplying any supporting caselaw, the Defendants assert the Plaintiffs' allegations regarding lack of medical necessity do not relate back to the claims involving improper coding in part because Rule 9(b) impacted the relate back analysis and heightened its standard. The Court finds this argument unpersuasive for three reasons. First, one court presented with this exact argument rejected it, finding: "Where both the original and the amended pleadings each independently meet the requirements of Rule 9(b), which is the case here, the goals of Rule 9(b) are largely protected." *Wells v. HBO & Co.*, 813 F. Supp. 1561, 1566 (N.D. Ga. 1992) (footnote omitted). Also problematic is that Rules 9(b) and 15(c), while related, concern separate matters, and the language of neither rule contemplates changing the general standard in Rule 15(c)(1)(B), which merely mandates that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Last, the Defendants' argument is inconsistent with the relation back doctrine, which "is to be liberally applied." *Olech v. Village of Willowbrook*, 138 F. Supp. 2d 1036, 1041 (N.D. Ill. 2000).